**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Palm Properties, LLC; a Nevada limited liability company; Leading Edge Ventures, LLC, a Nevada limited liability company; Robert Lauer, an individual,<br><br>Plaintiffs/Counterdefendants<br>v.<br><br>Clark County Department of Environment and Sustainability Division of Air Quality,<br><br>Defendant/Counterclaimant | Case No.: 2:26-cv-00170-JAD-NJK<br><br>**Order Denying Motions for a Preliminary Injunction and Granting Motion to Dismiss Counterclaims**<br><br>[ECF Nos. 8, 11, 14] |

Palm Properties, LLC, Leading Edge Ventures, and Robert Lauer (collectively, "Palm Properties") operate an unpaved commercial parking lot in Clark County. The county takes the position that the operation violates Clark County's Air Quality Regulations (AQR) § 92, so it fined Palm Properties. Palm Properties now sues Clark County, arguing that the regulation violates its due-process rights, its right to be free from unreasonable searches and excessive fines, and its right to a jury trial. Clark County countersues for negligence and nuisance, alleging that the unpaved lot pollutes the air with invisible, harmful particles that injure the county and its residents.

Both parties move for a preliminary injunction: the county requests an end to Palm Properties' operation, and Palm Properties seeks a suspension of its regulatory penalties. Palm Properties also moves to dismiss Clark County's negligence and nuisance claims. Because Clark County has not established its standing to sue for the alleged pollution, I dismiss its negligence and nuisance claims for lack of subject-matter jurisdiction. That dismissal leaves Clark County unable to show a likelihood of success on the merits on either of its claims, so I deny its

preliminary-injunction motion. I also deny Palm Properties' preliminary-injunction motion because it hasn't established irreparable harm or a likelihood of succeeding on the merits of the Seventh Amendment claim on which that request is based.

**Background**

On land bordered by two condo complexes, single-family homes, a self-storage facility, and an elementary school, Palm Properties operates a parking lot for commercial trucks.[1] It applied for land-use permits to allow trucks to enter and exit on Happy Valley Avenue, the residential street that provides access to the lot.[2] But Clark County's Department of Environment and Sustainability, Division of Air Quality discovered alleged regulatory violations when assessing Palm Properties' permit application.[3] So instead of granting Palm Properties permission to operate its business, the county assessed several regulatory fines under AQR § 92, which states that "[n]ew parking lots constructed after January 1, 2003, . . . must be paved."[4] Palm Properties offered several arguments for why its parking lot isn't regulated by AQR § 92, but the county's hearing board denied all of its appeals.[5]

---

[1] ECF No. 7 at ¶¶ 15–19, 23.

[2] *Id.* at ¶ 20; ECF No. 1 at ¶¶ 18–19.

[3] ECF No. 1 at ¶¶ 20, 23.

[4] *Id.* at ¶¶ 14, 20, 23, 50; ECF No. 7 at ¶¶ 25, 29 (cleaned up).

[5] *See* ECF No. 7 at ¶¶ 31–35 (describing Palm Properties' arguments during administrative hearings, including that it was "allowed to use the property as unpaved parking, because it was used as unpaved parking before 2003," the "property was paved, but that pavement was covered by feet of dirt," the county's inspectors trespassed to investigate the property, it "had a duty to create truck parking," and "it was Clark County that was prohibiting [it] from paving the property, because Clark County improperly denied [its] waiver to exit onto" the residential road (cleaned up)).

Palm Properties now sues the county, alleging that its administrative process violates several constitutional rights.[6] In response, the county counterclaimed for common-law negligence and nuisance, theorizing that Palm Properties' operation of an unpaved parking lot not only violates the county's regulatory scheme but also amounts to tortious behavior against the county and its residents.[7] Both tort claims are based on the alleged pollution created by unpaved parking lots. For its negligence claim, Clark County alleges that, as explained in the county's regulations, driving over dirt lots produces the pollutant $PM_{10}$, which "negatively impacts the health of thousands of individuals all over Las Vegas."[8] The county further alleges that Palm Properties breached its duty to comply with applicable regulations and prevent pollution by allowing commercial trucks to kick up invisible, noxious irritants on the property, which "has irreparably harmed Clark County by polluting the environment with $PM_{10}$."[9] For its nuisance claim, Clark County avers that Palm Properties' actions interfere with the public's use and enjoyment of land.[10] It contends that it can assert these counterclaims to protect the county, its residents, and the general public.[11]

Palm Properties moves to dismiss both claims under Federal Rule of Civil Procedure (FRCP) 12(b)(6), arguing that Clark County attempts to couch regulatory violations as state-common-law claims, that the county lacks standing to sue on behalf of its residents, and

---

[6] ECF No. 1 at ¶¶ 1–4.

[7] ECF No. 7 at ¶¶ 71–95.

[8] *Id.* at ¶¶ 49–50.

[9] *Id.* at ¶ 50.

[10] *Id.* at ¶¶ 85–95.

[11] *Id.* at ¶¶ 80, 89–90.

that neither the negligence nor nuisance claims plausibly alleges the required elements.[12] Both parties also seek preliminary injunctions: Clark County argues that Palm Properties' alleged pollution continues to harm the county and its residents so the court must intervene, while Palm Properties seeks to enjoin the county from imposing regulatory fines because "the legality of the underlying proceeding is in question."[13]

## Analysis

### A. Clark County lacks standing to bring these negligence and nuisance claims, which thwarts both its counterclaims and its preliminary-injunction motion.

FRCP 12(b)(1) authorizes federal courts to dismiss a complaint if the court lacks subject-matter jurisdiction. The party asserting federal jurisdiction has the burden of establishing all of its requirements, including Article III standing.[14] "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."[15] The plaintiff must satisfy Article III's standing requirements for each claim it "seeks to press and for each form of relief that is sought."[16] A plaintiff satisfies Article III's requirements by showing that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and

---

[12] ECF No. 14 at 2.

[13] ECF No. 8 at 2; ECF No. 11 at 15.

[14] Fed. R. Civ. P. 12(b)(1); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).

[15] *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (internal quotation marks omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).

[16] *Id.* at 1068–69 (internal quotation marks omitted) (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008)).

(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[17]

Palm Properties argues that Clark County fails to allege a concrete and particularized injury to itself, which is necessary to establish Article III standing. It contends that a municipality cannot bring "generalized claims on behalf of the public," and neither "generalized environmental and public health concerns" nor "speculative environmental concerns untethered to any site-specific evidence" constitutes "specific injury suffered by Clark County as a governmental entity," so the county cannot establish Article III standing.[18] Palm Properties further points out that Clark County identifies no Nevada statute giving it standing to bring environmental nuisance or negligence claims on behalf of its residents.[19]

Without addressing the Article III standard, Clark County repeats that it can bring negligence and nuisance claims on behalf of the public.[20] It also responds that the county itself is harmed because it must "keep its air clean under the Clean Air Act" (CAA) and, if it fails, "the EPA will place Clark County into a higher level of non-attainment which will cause new costly regulations that further burden the county"; it can't attract tourists or "maintain healthy employees" with polluted air; and its healthcare costs and property taxes will increase because of Palm Properties' nuisance.[21] But Palm Properties replies that none of these "speculative

---

[17] *Id.* at 1067 (internal quotation marks omitted) (quoting *Friends of Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167 (2000)).

[18] ECF No. 14 at 5; ECF No. 11 at 7.

[19] *See* ECF No. 11 at 6 (explaining that Nev. Rev. Stat. § 40.140, which defines nuisance, requires an interference with property rights "not merely . . . generalized harm to 'the public'" and that Clark County fails to assert any other cognizable negligence theory).

[20] ECF No. 16 at 4; ECF No. 13 at 3.

[21] ECF No. 16 at 4 (cleaned up).

downstream harms" is in the county's complaint and that the county conflates constitutional standing with regulatory authority because it can "plainly" regulate air quality but it fails to "state [] common-law negligence [and nuisance] claim[s] for its own recoverable damages."[22]

***1. Clark County doesn't assert environmental-law claims, and it hasn't alleged any concrete or particularized administrative injuries.***

Clark County primarily relies on *City of Davis v. Coleman*[23] to argue that a municipality can seek an injunction to prevent negative environmental impacts.[24] The City of Davis, California, sought an injunction to prevent freeway construction, alleging that the Division of Highways of the California Department of Public Works and Federal Highway Administration's failure to conduct an environmental impact study (EIS) violated the National Environmental Protection Act (NEPA) and its state analog.[25] The Ninth Circuit found that the city alleged concrete and particularized harms that it would experience if freeway construction proceeded without an EIS, including damage to the quality and quantity of the city's water supply from industrial-waste contamination and an influx in population that would frustrate the city's resource and population-planning efforts.[26] The court explained that the "procedural injury" incurred by an agency's "failure to prepare an EIS" risks "serious environmental impacts" on the city.[27] And it found that Davis had sufficiently alleged that "the environmental effects . . . would affect interests of the city itself," including providing water service and planning for population

[22] ECF No. 17 at 6–7.

[23] *City of Davis v. Coleman*, 521 F.2d 661 (9th Cir. 1975).

[24] ECF No. 16 at 4.

[25] *City of Davis*, 521 F.2d at 665–66.

[26] *Id.* at 671.

[27] *Id.*

growth.[28] The Ninth Circuit cited NEPA's requirement that copies of an EIS must be made available to the public and explained that Davis itself was entitled to comment "on any EIS covering the [highway] project."[29] So the failure to conduct an EIS deprived Davis of its "opportunity to participate in the administrative decision-making process."[30] The Ninth Circuit found these allegations sufficient to "satisfy the 'injury in fact'" standard for a NEPA claim.[31]

Clark County doesn't bring a NEPA claim, so *City of Davis* is not analogous. NEPA "expressly contemplates that state and local governments are to play an important role in the effectuation of national environmental policy."[32] So even though the City of Davis's interests derived from its residents' interests, California law tasked the municipality with protecting these environmental interests by mandating water supply and population-planning efforts.[33] Clark County hasn't identified any similar concrete and particularized interests that it's required to protect. It alleges only that the unpaved parking lot "has irreparably harmed Clark County by polluting the environment with $PM_{10}$" and that "Clark County may bring this action on behalf of its residents and to protect the general public from continuing harm."[34] These are not the type of specific injuries that gave rise to Article III standing in *City of Davis*.

---

[28] *Id.*

[29] *Id.*

[30] *Id.* (cleaned up).

[31] *Id.*

[32] *Id.* at 672.

[33] *Id.*

[34] ECF No. 7 at ¶¶ 50, 80.

Clark County argues that the CAA is like NEPA, so if Palm Properties violates the CAA, then the county can sue to protect the public.[35] But the county asserts negligence and nuisance tort claims, not statutory CAA or NEPA claims. Clark County thus cannot allege the same injuries inflicted on a municipality by an agency's failure to follow federal environmental laws. Clark County's efforts to add standing allegations in its motion-to-dismiss response, in which it argues that Palm Properties' actions could result in CAA fines, reduced tourism, and higher health costs, is too little too late.[36] When determining a pleading's sufficiency on a motion to dismiss, the district court may consider only allegations in the complaint, exhibits attached to the complaint, and information incorporated by reference.[37]

#### ***2. The county's alleged injuries aren't comparable to an individual plaintiff's injuries in environmental-tort cases.***

The other environmental tort cases that the county relies on are distinguishable because the injuries in those cases occurred to an individual plaintiff, not a governmental entity. For example, in *D'Amico v. Waste Management of New York, LLC*,[38] the plaintiff brought a class action against a waste-management company, alleging that its landfill "caused noxious odors to be emitted into the surrounding environment, resulting in property damage to himself and the owner/occupants and renters in the surrounding area."[39] The New York district court found that

---

[35] ECF No. 16 at 4–5 ("Just like NEPA was enacted to protect the environmental interests of all citizens by making environmental factors of primary duty to federal agencies, the [CAA] was enacted to protect the air of the public by making state and local governments have a duty to enforce air-quality regulations." (cleaned up)).

[36] *Id.* at 4.

[37] *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

[38] *D'Amico v. Waste Mgmt. of N.Y., LLC*, 2019 WL 1332575 (W.D.N.Y. Mar. 25, 2019).

[39] *Id.* at *1.

the plaintiff's negligence claim could proceed because the "[p]laintiff allege[d] that the noxious odors permeate[d] his property and the properties of the putative class members."[40] Unlike the plaintiffs in *D'Amico*, Clark County fails to allege any damage to itself. In its negligence claim, the county states only that it has standing to "bring this action on behalf of its residents and to protect the general public from continuing harm."[41] It does not allege that Palm Properties' pollution is injurious to the county itself by, for example, increasing costs or requiring pollutant clean up.

The *D'Amico* plaintiffs also brought a public-nuisance claim (and the court dismissed it for lack of standing) but in Nevada, there is no statutory public-nuisance cause of action; Nevada Revised Statutes (NRS) 40.140 requires any party bringing a nuisance claim to allege substantial and unreasonable interference with its own use and enjoyment of the land.[42] For example, in the Nevada Supreme Court case of *Sowers v. Forest Hills Subdivision*, the plaintiffs alleged that a proposed residential wind turbine in their neighborhood would be a nuisance under § 40.140.[43] The court found noise, diminution of property values, and aesthetics sufficient to establish nuisance and issued a permanent injunction.[44] Clark County argues that "if noise, property values, and aesthetics are substantial and unreasonable, then making air unhealthy is also substantial and unreasonable."[45] But in *Sowers*, the neighborhood's residents themselves alleged

---

[40] *Id.* at *4, *7.

[41] ECF No. 7 at ¶ 80.

[42] *See* Nev. Rev. Stat. § 40.140 (defining nuisance as "[a]nything which is injurious to health, or indecent and offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property").

[43] *Sowers v. Forest Hills Subdivision*, 294 P.3d 427, 431 (Nev. 2013).

[44] *Id.* at 432–33.

[45] ECF No. 16 at 6 (cleaned up).

that they personally would be injured by the proposed wind turbine in their community, while Clark County alleges only harm to others: "the public cannot use or enjoy their property outside while the air quality is unhealthy" and pollution "causes serious health conditions and impacts individuals' health in Clark County."[46] These allegations might establish nuisance liability under Nevada law for individual plaintiffs, but not for the county itself.

#### ***3. Clark County didn't allege that it incurred the type of financial harm sufficient for municipality standing.***

The case of *City of Seattle v. Monsanto Company* further illustrates the types of municipal injury needed for standing.[47] Seattle brought public-nuisance and negligence claims against Monsanto, alongside other tort theories, alleging that the company's toxic-chemical production "contaminate[d] Seattle's drainage systems and waterways," so Monsanto should pay for the cost of cleaning up the contamination.[48] The district court found that Seattle didn't need to own the contaminated water to have standing for a public-nuisance claim because "Seattle is injured when it suffers financial loss due to toxic contamination" and, "[a]t the very least, this injury vests Seattle with Article III standing."[49]

While Clark County's theory is more similar to Seattle's than Davis's, it still lacks a material element for municipal standing: direct financial injury. Seattle specifically alleged that it would have to shoulder the cost of cleaning the waterways, but Clark County's complaint

[46] *Sowers*, 294 P.3d at 434; ECF No. 7 at ¶ 93 (cleaned up).

[47] *City of Seattle v. Monsanto Co.*, 237 F. Supp. 3d 1096 (W.D. Wash. 2017).

[48] *Id.* at 1100–01.

[49] *Id.* at 1106; *see also City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 786 (9th Cir. 2019) (finding that states had standing to challenge Department of Homeland Security's proposed rule because the rule could lead to "a reduction in Medicaid reimbursement payments to the states of about $1.01 billion" (cleaned up)).

alleges general injuries that can only be read as injuries suffered by the public, not the county itself. So I find that Clark County's common-law negligence and nuisance claims do not allege the concrete and particularized injury in fact necessary to establish standing, and I grant the motion to dismiss the county's counterclaims because this court lacks subject-matter jurisdiction over them. And because Clark County lacks standing to bring its claims, I also deny its motion for a preliminary injunction premised on these claims because the county can't establish a likelihood of success on any claim.[50]

**B. Palm Properties fails to establish that it is entitled to a preliminary injunction.**

A preliminary injunction is an "extraordinary" remedy "never awarded as of right."[51] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[52] The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[53] Under either approach, the starting point is a merits analysis.

---

[50] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (holding that a plaintiff must establish that it is likely to succeed on the merits for a court to grant its preliminary-injunction motion).

[51] *Id.* at 24.

[52] *Id.* at 20.

[53] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Palm Properties requests an injunction prohibiting the county from enforcing the monetary penalties imposed on it for operating its unpaved parking lot.[54] It argues that it is likely to succeed on the merits of its claims because the county's enforcement practices are unconstitutional.[55] Palm Properties also states that the balance of equities favors this injunction because it "face[s] ongoing enforcement, escalating penalties, and the imminent threat of being forced to cease or materially alter [its] business operations."[56] It adds that Clark County would merely have to "maintain the status quo" of not collecting penalties and that this injunction would serve the public interest "in ensuring that governmental agencies act within constitutional and statutory limits."[57] On irreparable harm, Palm Properties states only that it "face[s] ongoing enforcement, escalating penalties, reputational harm, and compelled compliance with unlawful directives," which it characterizes as harms that "cannot be undone."[58] Palm Properties explains in its notice of supplemental facts that the county recently demanded payment of the $15,000 penalty and refuses to suspend collection while this litigation is pending.[59]

#### 1. *Palm Properties has not established that it is likely to succeed on its Seventh Amendment claim.*

While Palm Properties brings four constitutional claims under 42 U.S.C. § 1983, its preliminary-injunction motion is founded only on its Seventh Amendment right-to-a-jury-trial

[54] ECF No. 11 at 12.

[55] *Id.* at 10–12.

[56] *Id.* at 12.

[57] *Id.* at 12–13.

[58] *Id.* at 12.

[59] ECF No. 23 at 2, 8.

cause of action.[60] Palm Properties theorizes that the county's "adjudication of private rights" and "imposition of punitive monetary penalties" entitles it to an Article III court.[61] It argues that because the county's $15,000 in monetary penalties are "punitive in nature," the fines are "indistinguishable from common-law actions for fines and forfeitures historically tried before juries," and neither the CAA nor Nevada's federally-approved State Implementation Plan statutorily authorizes the county to assess civil penalties.[62]

Clark County responds that the CAA permits states to enforce administrative fines under state law.[63] NRS 445B.500 directs the county to "establish a program for the control of air pollution and administer the program," including creating a hearing board and officers to "'determine violations and levy administrative penalties' for violations of air-quality regulations."[64] The EPA delegates authority to the states to implement air-pollution regulations, and Nevada executes its CAA obligations through county enforcement, including allowing counties to impose civil penalties.[65] So Palm Properties has not shown that the county lacks statutory authority to administer civil penalties.

Palm Properties argues that it is nonetheless entitled to be heard in an Article III court, but it fails to address the public-rights exception to the Seventh Amendment. The constitution

---

[60] ECF No. 11 at 10–12.

[61] *Id.* at 10–11.

[62] *Id.* at 11–12.

[63] ECF No. 13 at 8.

[64] *Id.* at 8 (quoting Nev. Rev. Stat. § 445B.500(1)(d)(3)) (cleaned up).

[65] *See* 42 U.S.C. § 7407(a) (assigning states the "primary responsibility for assuring air quality" within the state by submitting an implementation plan); 42 U.S.C. § 7411(c)(1) (permitting the EPA to delegate its authority to implement air-pollution standards to the states); 40 C.F.R. § 60.26 (giving states the "legal authority" to implement their air-pollution plans by "[e]nforcing applicable laws, regulations, [and] standards").

creates a jury-trial right for "[s]uits at common law," which "has been construed to refer to cases tried prior to the adoption of the Seventh Amendment in courts of law in which jury trial was customary as distinguished from courts of equity or admiralty in which jury trial was not."[66] "[W]hen Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment[.]"[67] While there is no clear distinction between public and private rights in deciding whether an action falls within the public-rights exception, "what matters is the substance of the action, not where Congress has assigned it," i.e., not whether it's been assigned to an administrative agency or an Article III court.[68] The essential question is whether Congress "created a seemingly private right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary."[69]

For example, penalties imposed on employers for unsafe workplace conditions that violate the Occupational Safety and Health Act (OSHA) fall within the public-rights exception. In *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Commission*, the Supreme Court noted that OSHA "created a new statutory duty to avoid maintaining unsafe or unhealthy working conditions" and permitted an administrative agency to obtain injunctions and impose civil penalties on employers with unsafe working environments.[70] The employer–petitioners

---

[66] *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 449 (1977).

[67] *Id.* at 455.

[68] *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 134 (2024).

[69] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54 (1989).

[70] *Atlas Roofing Co., Inc.*, 430 U.S. at 444.

were cited for OSHA violations and proceeded before administrative law judges.[71] After a negative finding, the employers sued the agency, contending that the administrative regime circumvented their right to a jury trial.[72] The High Court reasoned that statutory proceedings like the employers' hearings under OSHA did not exist at common law; Congress established OSHA to remedy work injuries.[73] So it held that the government "created a new cause of action, and remedies therefor, unknown to common law," excepting these proceedings from the Seventh Amendment's right to a jury trial.[74]

In contrast, civil penalties imposed by the Securities and Exchange Commission (SEC) for securities fraud do not meet the public-rights exception. In *Securities and Exchange Commission v. Jarkesy*, the Supreme Court held that the SEC's imposition of civil penalties for securities fraud violated the Seventh Amendment jury-trial right because "[t]he SEC's antifraud provisions replicate common-law fraud."[75] Palm Properties relies on *Jarkesy* to argue that the county's civil penalties "involve the adjudication of private rights, . . . a category of claims that must be resolved by an Article III Court."[76] But civil penalties involving the adjudication of private rights can still meet the public-rights exception, and Palm Properties does not meaningfully address how or why the exception doesn't apply here. In *Jarkesy*, the High Court found that it did not apply because the SEC statute "target[ed] the same basic conduct as

---

[71] *Id.*

[72] *Id.* at 448.

[73] *Id.* at 453–54.

[74] *Id.* at 461.

[75] *Jarkesy*, 603 U.S. at 115–18 (cleaned up).

[76] ECF No. 11 at 10–11.

common-law fraud, employ[ed] the same terms of art, and operate[d] pursuant to similar legal principles."[77]

The scheme under which Palm Properties was fined is more like the OSHA one in *Atlas Roofing Company* than the SEC one in *Jarkesy*. Congress created the CAA to combat air pollution and implemented a scheme that, while potentially implicating private rights by imposing civil penalties, is "closely intertwined with a federal regulatory program that Congress has power to enact."[78] Air pollution standards, targeting businesses for their pollutants and adjudicating these penalties, did not exist at common law.[79] So it is unlikely that the county violated Palm Properties' Seventh Amendment rights, leaving Palm Properties unlikely to succeed on the merits this its claim.[80]

***2. Palm Properties' economic damages aren't irreparable harm.***

Even if Palm Properties had shown a likelihood of success on the merits of its Seventh Amendment claim, the absence of irreparable harm dooms its injunctive-relief request. Palm Properties' irreparable-harm theory is that it "face[s] ongoing enforcement, escalating penalties,

---

[77] *Jarkesy*, 603 U.S. at 118, 134 (cleaned up); *accord Granfinanciera, S.A.*, 492 U.S. at 64 (finding that "a bankruptcy trustee's right to recover a fraudulent conveyance . . . [is] more accurately characterized as a private rather than a public right").

[78] *Granfinanciera, S.A.*, 492 U.S. at 54; *see* ECF No. 13 at 8 (arguing that the county's proceedings do not require jury trials because, like OSHA, the CAA created a new statutory duty "for individuals not to pollute the air and for the local governments to enforce air quality regulations").

[79] *See, e.g.*, *Sligo Creek Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 177 F.4th 556, 560 (4th Cir. 2026) (explaining that *Jarkesy* determined whether an administrative enforcement scheme invoked the public-rights exception by deciding whether the facts were more similar to *Granfinanciera*—Congress "simply reclassified a pre-existing common-law cause of action—or *Atlas Roofing*—Congress "'did not borrow its cause of action from the common law,' avoided 'common law terms of art,' and created a 'self-consciously novel' type of action 'unknown to the common law'" (cleaned up)).

[80] Palm Properties does not argue that it is likely to succeed on the merits of its three other constitutional claims, so I don't address those claims here.

reputational harm, and compelled compliance with unlawful directives."[81] But economic penalties aren't irreparable harm because a party can recover any money lost "in the ordinary course of litigation."[82] Palm Properties fails to identify what kind of reputational damage it would suffer from paying the county's civil penalties, and if unjustly paid, these penalties would be recoverable in the ordinary course of litigation. So Palm Properties has failed to establish the irreparable harm needed to garner injunctive relief.[83]

## Conclusion

Because Clark County lacks standing to bring its negligence and nuisance claims, IT IS ORDERED that Palm Properties, Leading Edge Ventures, and Robert Lauer's motion to dismiss **[ECF No. 14] is GRANTED** for lack of subject-matter jurisdiction; Clark County's counterclaims are dismissed, and the county's motion for a preliminary injunction to enjoin plaintiffs from operating their business **[ECF No. 8] is DENIED.**

IT IS FURTHER ORDERED that Palm Properties' cross-motion for a preliminary injunction to enjoin the county from collecting the civil penalties **[ECF No. 11] is DENIED**.

U.S. District Judge Jennifer A. Dorsey
October 15, 2026

[81] ECF No. 11 at 12.

[82] *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015); *see Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."); *see, e.g.*, *Amwest Sur. Ins. Co. v. Reno*, 52 F.3d 332, at *1 (9th Cir. 1995) (unpublished) (upholding denial of preliminary injunction and noting that if the plaintiff was "ultimately successful, it [could] get its money back and be made whole by money damages").

[83] Because I find that Palm Properties is unlikely to succeed on the merits and cannot establish irreparable harm, I do not address the other prongs of the preliminary-injunction analysis.